IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN THE MATTER OF ADMINISTRATIVE, : No. 1:18-MC-546
ESTABLISHMENT INSPECTION OF :
SPA & ORGANIC ESSENTIALS OF :
PENNSYLVANIA, LLC, 2345 SOUTHERN :
AVENUE, SOUTH WILLIAMSPORT, :
PA. 17702 :

## MEMORANDUM OPINION

**I.** **Statement of Facts and of the Case**

This case involves an administrative search warrant executed by the Food and Drug Administration (FDA), and comes before us for resolution of two motions: a motion by Spa & Organic Essentials of Pennsylvania to quash the warrant, (Doc. 7),[1] and a motion for enforcement and contempt filed by the FDA. (Doc. 9.) For the reasons set forth below, both motions will be denied.

The factual background of this FDA investigation is thoroughly detailed in the affidavit provided in support of this administrative search warrant. Briefly, that affidavit explained that Spa & Organic Essentials receives, packs, holds and distributes food products, including *Mitragyna speciosa* or kratom. This product is

---

[1] In this motion Spa & Organic Essentials had also sought to unseal the affidavit in support of this warrant. By a prior order we granted this relief. (Doc. 17.) Therefore, the only issue before the court at this time with respect to Spa & Organic Essentials is that entity's motion to quash this administrative search warrant.

1

considered a "food" under federal law, 21 U.S.C § 321(f), in that *Mitragyna speciose*, or kratom, is used for food or drink for humans or is used as a component in food or drink. (Doc. 5, ¶4.) Spa & Organic Essentials reportedly receives kratom from Indonesia. (Id.) Because kratom constitutes food within the meaning of the law, Spa & Organic Essentials is subject to regulation by FDA under the Act's food provisions. (Id.)

This search followed a nationwide outbreak of salmonella that was attributed to tainted kratom distributed by Spa & Organic Essentials. On March 6, 2018, FDA's Coordinated Outbreak Response and Evaluation Network issued an assignment requesting an inspection and sample collection at Spa & Organic Essentials, as part of its investigation into this nationwide outbreak of salmonella infections linked to kratom. In the course of this outbreak from January 2018 through May 2018, approximately 199 people from 41 states were infected with the outbreak strains of salmonella associated with kratom. At least 50 people were hospitalized. In this case FDA was following up on a report from a North Dakota patient who reported making an online purchase of Red Maeng Da Tea, a variety of kratom, from the website http://www.soapkomer.com. Soap Komer is located in Colorado; it identified Mr. Neil Felver, the owner of Spa & Organic Essentials, as its only supplier for Red Maeng Da. (Id., ¶8.)

The kratom sold by Spa & Organic Essentials which was consumed in the North Dakota salmonella outbreak was subsequently tested and was found to test positive for the strains of salmonella associated with this nationwide outbreak of illness. (Id., ¶9.) FDA then corroborated that Spa & Organic Essentials was a source of this tainted kratom. Specifically, FDA made an undercover purchase of kratom from another vendor who was supplied by Spa & Organic Essentials. The sample purchased through this transaction also tested positive for a strain of salmonella that was the same as the strain of salmonella found in the North Dakota case that was linked to the nationwide outbreak. (Id., ¶10.) Thus, the FDA investigation linked Spa & Organic Essentials twice as the source of tainted kratom which led to a nationwide outbreak of salmonella.

Armed with this information, between March and May 2018 the FDA sought on five separate occasions to secure the cooperation of the owners of Spa & Organic Essentials in a thorough food safety inspection. (Id., ¶¶11-15.) Notwithstanding the immediate health and safety concerns which this salmonella outbreak presented, the FDA was rebuffed in these efforts. The owner of Spa & Organic Essentials refused to cooperate by providing any details regarding the destruction and distribution of the kratom, or disclose the name of his supplier, stating that because he believed the FDA was "trying to destroy his livelihood," he would not provide any information. (Id., ¶14.)

Stymied in its efforts to secure the cooperation of Spa & Organic Essentials on this investigation into a nationwide food-borne illness outbreak, the FDA turned to the courts and secured an administrative search warrant for a complete inspection of Spa & Organic Essentials on September 27, 2018. (Docs. 1-6.) The warrant was executed on October 3, 2018, and Spa & Organic Essentials thereafter filed a motion to quash the administrative search warrant. (Doc. 7.) Despite the detailed probable cause citation contained in this warrant affidavit, this motion argued that the warrant was facially invalid, and fatally flawed in that it did not expressly incorporate the probable cause affidavit or make explicit probable cause findings. The motion to quash also asserted that the search was overly broad, and the searching agents failed to leave receipts. (Id.)   At the time that Spa & Organic Essentials filed this motion, it did not have access to the affidavit in support of this warrant and requested such access. Thus, Spa & Organic Essentials attacked the agency's probable cause showing without knowing precisely what that showing had been.. We subsequently ordered the release of the affidavit to Spa & Organic Essentials. (Doc. 17.)

At our direction, the FDA has responded to this motion to quash, and has also filed its own motion, captioned as a motion for enforcement and contempt. (Doc. 9.) In this motion for contempt, the FDA recites that certain records which it seized exist in a password-protected computerized format and the owner of Spa & Organic Essentials has declined to make statements to the FDA or provide the passwords

needed to access these records. Thus, on the basis of the owner's failure to do something that was not explicitly called for under the search warrant; namely make statements and provide passwords, the FDA sought a further enforcement order relating to this warrant and a contempt citation. (Id.)

Both motions are now fully briefed (Docs. 10, 14, 15, 16, 18 and 19), and are, therefore, ripe for resolution. For the reasons set forth below, both motions will be denied.

## II. Discussion

Turning first to Spa & Organic Essentials' motion to quash this warrant, the legal benchmarks which govern such motions are familiar ones. In this setting a:

> determination that the . . . application for a warrant failed to establish probable cause is subject to plenary review. In Re Establishment Inspection of Midwest Instruments Co., 900 F.2d 1150, 1153 (7th Cir.1990) (review of district court's determination of administrative probable cause is *de novo* ). See also United States v. American Investors of Pittsburgh, Inc., 879 F.2d 1087, 1103 (3d Cir.) (Fourth Amendment challenge to scope of search warrant subject to plenary review), cert. denied, ––– U.S. ––––, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989). But "to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," we must give great deference to the magistrate's determination that probable cause existed. Massachusetts v. Upton, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984). See also Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); In Re Establishment Inspection of Trinity Industries, Inc., 898 F.2d 1049, 1050 (5th Cir.1990) (deferential standard applies to magistrate's determining probable cause for OSHA administrative warrant). Subject to a narrow exception not at issue here, the reviewing court may consider only evidence within the four corners of the warrant application to the

magistrate. Donovan v. Mosher Steel Co., 791 F.2d 1535, 1537 (11th Cir.1986) (district court abused discretion in ordering discovery beyond face of OSHA's warrant application), cert. denied, 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987); West Point–Pepperell, Inc. v. Donovan, 689 F.2d 950, 959 (11th Cir.1982) (judicial review strictly limited to information brought to magistrate's attention.)

Martin v. Int'l Matex Tank Terminals-Bayonne, 928 F.2d 614, 619–20 (3d Cir. 1991). In making this probable cause determination, however, it is well-settled that: "Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' " Marshall v. Barlow's, Inc., 436 U.S. 307, 320, 98 S. Ct. 1816, 1824, 56 L. Ed. 2d 305 (1978). Accordingly, in this factual context probable cause "may be based on either: 1) a particularized showing that the manufacturing plant targeted for the search is the location of suspected . . . violations; or 2) a showing that the industry in general poses certain hazards to workers coupled with a showing that the targeted facility was selected at random as part of a general plan to pursue and eliminate suspected industry-wide violations. Pennsylvania Steel Foundry and Machine Company v. Secretary of Labor, 831 F.2d 1211, 1214 (3d Cir.1987)." Shalala v. Caterpillar Inc., No. 4:CV-96-0792, 1996 WL 343386, at *4 (M.D. Pa. May 7, 1996).

Moreover, several other significant Fourth Amendment tenets apply in this administrative search warrant setting. For example, the good-faith exception to the exclusionary rule, which prevents exclusion of evidence seized in good faith reliance upon a warrant whose validity later comes into question, extends to administrative searches like the search conducted in the instant case. See generally, Davis Metal Stamping, Inc. v. Occupational Safety & Health Review Comm'n, 800 F.2d 1351, 1358 (5th Cir. 1986). Therefore, Spa & Organic Essentials would not be entitled to quash an administrative warrant and suppress the evidence seized pursuant to that warrant by simply alleging that there was some minor, technical deficiency in what otherwise appeared to be a facially valid warrant, if the FDA acted reasonably, and in good faith, in relying upon that warrant.

Furthermore, settled legal principles govern our assessment of whether this warrant was overbroad, another claim advanced by Spa & Organics Essentials in its motion to quash. On this score:

> To determine whether a warrant was overbroad, we must compare the scope of search and seizure authorized by the warrant with the ambit of probable cause established by the supporting affidavit. In re Impounded Case (Law Firm), 840 F.2d 196, 200 (3d Cir.1988). In doing so, "the phrases in a search warrant must be read in context and not in isolation." United States v. Conley, 4 F.3d 1200, 1208 (3d Cir.1993). When a warrant is challenged as overbroad, the issue is whether there exists probable cause to support the breadth of the search that was authorized. Probable cause is a "practical, nontechnical concept." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). It cannot be "reduced to a neat set of legal rules." Gates, 462 U.S. at

7

> 232, 103 S.Ct. 2317. As the Supreme Court has observed, a "commonsense, practical" review of the "totality of the circumstances" is necessary to determine whether "in a particular factual context the probability of criminal conduct has been established." Id. at 230, 103 S.Ct. 2317. Thus, in determining whether a warrant authorizing seizure of large numbers of documents or other items is properly supported by probable cause and is thus not overbroad, a court must consider the "totality of the circumstances" in the particular case at hand.

United States v. Leveto, 343 F. Supp. 2d 434, 448 (W.D. Pa. 2004), aff'd, 540 F.3d 200 (3d Cir. 2008).

Judged against these guideposts, Spa & Essentials' motion to quash this warrant plainly fails. At the outset, we find that there was ample probable cause for the FDA to conduct this search. Spa & Organic Essentials had been identified through at least two separate means as the potential source for salmonella-tainted kratom, the substance which was inked to a nationwide outbreak of illness in 2018. The evidence tying Spa & Organic's products to a serious public health emergency was clear, compelling and provided probable cause to conduct this search. Moreover, the necessity of obtaining the warrant was clearly underscored by Spa & Essentials' adamant refusal to cooperate with other investigative measures, a refusal that placed this company's personal profits above concerns of public health.

Finding that probable cause clearly existed to conduct this search, we also conclude that Spa & Essentials' complaints about technical aspects of the warrant and its failure to more explicitly make probable cause findings or incorporate by reference the warrant affidavit are unavailing. While the better practice may be to

provide such explicit cross references in future warrants, the warrant, affidavit and application, read together as a whole provided sufficient probable cause to justify this search. Moreover, when we signed this warrant we did so based upon our firmly held conviction that the pleadings read as a whole provided probable cause to conduct this search. Further, we find that the FDA officials executing the warrant could reasonably have relied upon our decision that probable cause existed, and our approval of this facially valid warrant, when they seized these records and conducted this search. Therefore, any alleged technical shortcomings in the warrant itself would not vitiate this search conducted in good faith reliance upon the warrant issued by this court.[2]

---

[2] Upon issuing an order directing the release to Spa & Essentials of the affidavit which clearly tied Spa & Essentials' kratom distribution to a nationwide salmonella outbreak, we invited the parties to submit supplemental briefs. Spa & Essentials accepted this invitation and submitted a brief which no longer contended that probable cause was lacking, but instead seemed to argue two somewhat contradictory propositions: First, that the warrant has already been fully executed and therefore has no further vitality, or in the alternative that the warrant has not been fully executed but it is too late for the government to obtain any evidence because it unreasonably delayed the execution of the warrant. We reject both of these propositions. First, to the extent that records are sought by the warrant but are not yet received and reviewed there remains a potentially live controversy here. Second, any delay in the matter is a function of Spa & Organics' litigation contesting the warrant, and the court's consideration of that motion filed by Spa & Essentials. Neither of these factors should be attributed to the government, and neither of these considerations should now bar the government from seeking further compliance with the warrant.

Finally, Spa & Essentials' overbreadth challenge to the warrant also fails. The warrant application and affidavit plainly implicated Spa & Essentials in the nationwide distribution of tainted kratom which had led to outbreaks of salmonella poisoning throughout the United States in 2018. Given the refusal of Spa's owners to cooperate in any way in tracing the distribution of these tainted foodstuffs, the warrant's command that shipping records and invoices dating back to late 2017 be seized was both reasonable and reasonably related to the probable cause finding made by the court. Accordingly, Spa & Essentials' motion to quash will be denied.

For its part, the FDA has filed a motion seeking to enforce the warrant and hold Spa & Organics Essentials in contempt. (Doc. 9.) The basis for this motion, however, appears to relate to the refusal of Spa and Essentials' owner to speak with investigators or provide passwords which would enable access to password protected computer files. To the extent that this is the gravamen of the FDA's motion, we will deny this request as premature.

In our view a motion for enforcement of the warrant or for contempt, which seeks to compel an arguably testimonial act, the production of computer passwords, is premature and inappropriate for one simple reason. While we read the search warrant we signed as clearly authorizing the seizure of records, including computerized records, we do not construe that warrant as also affirmatively requiring Spa & Essentials' owners to engage in testimonial conduct like speaking to

investigators or divulging passwords. Since we do not find that the warrant included such commands we cannot find that an order enforcing the warrant could direct such disclosures. Nor do we believe that Spa & Essentials' owner would currently be in contempt of the search warrant for declining to speak to investigators or divulge this information.

Instead, we believe that the more appropriate Constitutional paradigm for evaluating these issues would be in the context of the Fifth's Amendment's protection against self-incrimination rather than the Fourth Amendment's prohibitions against unreasonable searches and seizures. On this score, we note that there may be considerable doubt regarding whether the owner-operator of a corporation like Spa & Essentials, LLC, can rely upon the Fifth Amendment to refuse to produce these corporate records, see Braswell v. United States, 487 U.S. 99, 100, 108 S. Ct. 2284, 2286, 101 L. Ed. 2d 98 (1988), however, we believe that the more appropriate course would be for the government to take additional legal steps to first compel the production of this additional information, rather than seeking to obtain this information through a motion to enforce the current search warrant where that warrant did not clearly call for such disclosures. Therefore, we will deny this motion without prejudice to the FDA seeking to compel this disclosure through other means.

An appropriate order follows.

## III. Order

Accordingly, for the foregoing reasons IT IS ORDERED that Spa & Essentials' motion to quash,(Doc. 7) and the FDA's motion to enforce warrant and for contempt, (Doc. 9) are DENIED.

So ordered this 17th day of April 2019.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge